BISHOP, P. J.
 

 The plaintiff, seeking to recover upon the assigned claim of partners who had served as defendant’s attorneys, appeals from the judgment that she take nothing. The trial court found that the value of the assignors’ services was greater than the sums that had been paid them, but nevertheless made no award against the defendant. We have
 
 *Supp. 856
 
 reached the conclusion that a judgment should have been entered in plaintiff’s favor.
 

 The defendant employed plaintiff’s assignors to represent her in a divorce action brought by her against her husband. The arrangement respecting counsel fees was that the assignors would look to the husband, acting under court orders, for their compensation. The complaint, in the divorce action, was filed February 25, 1953. In March, an order was made for the payment by the defendant in the divorce action, to plaintiff’s assignors, of $350 as attorney fees, any balance to be fixed at time of trial. Subsequent proceedings provided for further payments until $700 was received. However, all the sums paid were $550 less than the amount of $1,250, found by the trial judge, with commendable, but not unexpected, fairness, to represent the reasonable value of the services rendered the defendant.
 

 Under date of May 13, 1954, the defendant wrote plaintiff’s assignors that she requested that Mr. Sidney Cherniss be substituted in their place, stating that she had lost confidence in them. Without expressing any objection to the substitution, and with no assertion of a claim against the defendant for fees, plaintiff’s assignors joined in the execution of the familiar substitution-by-consent provided for in subdivision 1 of section 284, Code of Civil Procedure. Thereafter a property settlement was made in which the defendant in the divorce action was released from all liability for his wife’s attorney fees. A divorce decree was awarded the defendant in this action in June, 1954, and a motion of plaintiff’s assignors for further fees from the divorce defendant was denied.
 

 Had the relationship of attorney and client, existing between plaintiff’s assignors and the defendant, continued without interruption to the end of their employment, they would have had no cause of action for attorney fees against her, because they had agreed to look to her husband.
 
 (Sapiro
 
 v.
 
 Marquis
 
 (1951), 102 Cal.App.2d 34 [226 P.2d 736].) They would have had a cause of action, not upon any express contract, but for the reasonable value of their services up to the termination of the contract, had she discharged them either without cause
 
 (Neblett
 
 v.
 
 Getty
 
 (1937), 20 Cal.App.2d 65, 70 [66 P.2d 473, 476];
 
 Echlin
 
 v.
 
 Superior Court
 
 (1939), 13 Cal.2d 368, 375 [90 P.2d 63, 65, 124 A.L.R. 719]), or even if with cause (see
 
 Salopek
 
 v.
 
 Schoemann
 
 (1942), 20 Cal.2d 150, 153, 156 [124 P.2d 21, 24]. See, further,
 
 Oliver
 
 v.
 
 Camp
 
 
 *Supp. 857
 

 bell
 
 (1954), 43 Cal.2d 298, 304, [273 P.2d 15, 19]). The question before us thus becomes this: Did plaintiff’s assignors, by executing the substitution, waive their right to hold her for the unpaid portion of their earned fee ?
 

 A circumstance in the case last cited serves to narrow our question. In that case the plaintiff had ceased to be the attorney of a client (since deceased) by means of a substitution of counsel, signed by the plaintiff at the client’s request. The substitution was not signed without verbal protestations on plaintiff's part, however, and it was accompanied by the statement that he would expect to be paid the balance of the reasonable value of his services. Concerning this the Supreme Court states: “. . . plaintiff in effect promptly
 

 notified [the client] of the rescission of the contract when he advised him that he would execute the substitution of attorneys when he was discharged by [the client] but told [the client] he would hold him for the reasonable value of his services.” In this connection the trial court in the instant case found that “at no time from May 13, 1954, the date [plaintiff’s assignors] voluntarily consented to the substitution of attorneys, up to the commencement of this action . . . did [the assignors] . . . claim in any manner that the request for substitution . . . was without justification or that the termination of their employment was wrongful. ’ ’ It was also found that the substitution was made with the “voluntary” consent of the assignors. As we have already noted, plaintiff’s assignors made no protest when advised that the defendant had employed other counsel and wished them out of the ease.
 

 When confronted with the May 13 letter of their client, what courses were open to plaintiff’s assignors? Their client, of course, with certain exceptions not here involved, had the absolute right to substitute other counsel, whether acting with good reason or caprice.
 
 (Kirk
 
 v.
 
 Culley
 
 (1927), 202 Cal. 501, 505 [261 P. 994] ;
 
 O’Connell
 
 v.
 
 Superior Court
 
 (1935), 2 Cal.2d 418, 421 [41 P.2d 334, 335, 97 A.L.R. 918];
 
 Wright
 
 v.
 
 Security-First Nat. Bank
 
 (1939), 13 Cal.2d 139, 141 [88 P.2d 125, 126] ;
 
 Echlin
 
 v.
 
 Superior Court
 
 (1939), 13 Cal.2d 368, 372 [90 P.2d 63, 65, 124 A.L.R. 719] ;
 
 Davis
 
 v.
 
 Rudolph
 
 (1947), 80 Cal.App.2d 397, 402 [181 P.2d 765, 768].) Paced with this fact, plaintiff’s assignors could consent to the substitution, and so cooperate in effecting it as contemplated by subdivision 1 of section 284, or they could be uncooperative and, by refusing to give their consent, require the defendant
 
 *Supp. 858
 
 to take the trouble, and put the court to the bother, of following the steps set forth in subdivision 2 of section 284. After expostulating, in
 
 Oliver
 
 v.
 
 Campbell
 
 (the last case cited), the plaintiff there gave the “consent” required by subdivision 1, but was. nevertheless, allowed to recover. We find in the failure of plaintiff’s assignors to make a scene or to make a claim for compensation, no waiver of their right to compensation, and no basis for concluding that they had not been discharged but instead that there had been a mutual rescission of the contract of employment. A man condemned to the gas chamber may put up a fight, when his executioners call upon him, or he may bow to the inevitable and go along quietly. If he pursues the latter course, the consent that he gives is not voluntary, but without choice. So was the consent given by plaintiff’s assignors in the case last cited and in this ease.
 

 Our conclusion that the defendant was under a legal duty to recompense plaintiff’s assignors for the balance due them for the services rendered, destroyed the premise for the trial court’s conclusion that there was no account stated. We read
 
 Crane
 
 v.
 
 Stansbury
 
 (1916), 173 Cal. 631, 636 [161 P. 7], and
 
 Parsons
 
 v.
 
 Segno
 
 (1921), 187 Cal. 260, 269 [201 P. 580], as authorities for the principle that in such a case as this an account stated may come into existence. Whether it has or not remains a question for the trial court.
 

 The judgment is reversed; and the cause is remanded for a new trial; plaintiff to have her costs of appeal.
 

 Patrosso, J., and Swain, J., concurred.