[Civ. No. 6619. Fourth Dist. Dec. 9, 1960.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. METRIM CORPORATION (a Corporation) et al., Defendants; LONG BEACH FEDERAL SAVINGS AND LOAN ASSOCIATION (a Corporation), Defendant and Respondent; CHARLES K. CHAPMAN, Appellant.

Charles K. Chapman, in pro. per., for Appellant.

George C. Hadley, Joseph A. Montoya, Charles E. Spencer, Jr., and Robert L. Myer for Plaintiff and Respondent.

Clock, Waestman & Clock and John G. Clock for Defendant and Respondent.

SHEPARD, J.—This is an appeal taken by Charles K. Chapman, formerly acting as attorney for Long Beach Federal Savings and Loan Association (hereinafter called "Association"), from an order substituting in his place and stead the firm of Clock, Waestman & Clock as attorneys of record for Association in the above-entitled action. It purports to be an appeal by both Chapman and Association.

The record before us shows that this is an action by the State of California acting through its Department of Public Works seeking to acquire through eminent domain proceedings certain real property in which Association has a beneficial interest. Association is a federal savings and loan association which owes its corporate existence to a charter issued by the Federal Home Loan Bank Board (hereinafter called "Board") under authority of the Act of Congress of the United States known as Federal Home Loan Bank Act of 1933 (12 U.S.C.A., § 1464) (hereinafter called "Bank Act"), and the Rules and Regulations for the Federal Savings and Loan System adopted by Board [Ch. V(C) tit. 12 (Banks

and Banking), of the Code of Federal Regulations] (hereinafter referred to as "Rules").

On April 19, 1960, Board, by order number 13372, appointed C. E. Ault as Supervisory Representative in Charge of Association (hereinafter called "Supervisor"). Chapman had, prior to such appointment, been attorney of record for Association in the above entitled action. Supervisor, in accordance with advice from General Counsel for Board, promptly after his appointment and service thereof on Association's officers, employed Clock, Waestman & Clock as attorneys to represent Association in this cause, and on April 29, 1960, notified Chapman, in writing, of the substitution of Clock, Waestman & Clock as attorneys of record in this cause in the place and stead of Chapman, and that Chapman's services in the case were terminated as of April 22, 1960 (this appears to be the date when an oral notice of like substance was given by Supervisor to Chapman). On May 17, 1960, Chapman, purporting to act as attorney for Association, served and filed a notice of motion to make Supervisor a defendant in this action. On May 20, 1960, the day noticed for the hearing of that motion, Supervisor served on Chapman a notice of motion to cause the name of Clock, Waestman & Clock to be substituted of record as attorneys for defendant Association in the place and stead of Chapman. Attorneys representing all the interested parties were present in open court and a variety of other motions were presented. Chapman first objected to the hearing of the motion to substitute attorneys on the ground of insufficient notice. However, he later voluntarily participated in the arguments on the merits of the motion and occupied the major portion of the day militantly arguing all phases of his position. He repeatedly stated that he did not contest the fact of Supervisor's appointment. He confirmed the fact that Supervisor had notified him more than 20 days prior to the date of this hearing of the substitution of Clock, Waestman & Clock for himself. The whole burden of his opposition on the merits revolved around his contention that Supervisor was not acting in the best interest of Association; was not a faithful trustee and therefore was a proper adverse party; that the property involved was in reality the property of the shareholders of Association; that there should be dual representation of Association, first by an attorney chosen by its directors and shareholders and, secondly, by Supervisor; that Supervisor was disqualified from acting on behalf of Association because Supervisor had

a personal interest to so conduct the affairs of Association as to show that Supervisor's appointment by Board was justified.

Nowhere does Chapman claim to have a "power coupled with an interest." The record does not show any proprietary interest in him, nor that he holds any kind of contract for a specific period of time. His employment appears to be that of the ordinary attorney acting for the reasonable value of services rendered.

### Wisdom or Reasonableness of Board's Order Appointing Supervisor

■■■ First, it must be borne clearly in mind that all of Chapman's arguments on the merits, both in the trial court and on this appeal, when sifted to their ultimate conclusions, are addressed to the reasonableness and wisdom of Board's order and of Supervisor's actions and predicted actions. He speaks at length of the harshness of making an ex parte order, seizing the reins of control of Association without previous notice or hearing. He implies that both Supervisor and Board might be guilty of acts subversive of the best interests of Association and its shareholders in order to prove the correctness of the original order of seizure. He complains that Supervisor is about to settle the eminent domain proceedings with the State of California for the sum of about $950,000 and that this is only about one-fourth of the true value that should be obtained for the 60-odd acres of land involved and for severance damage; that for these and other similar reasons the directors of Association, whose authority has been displaced by the order appointing Supervisor, should be allowed to maintain separate attorneys of record in the name of Association to participate in the litigation.

Neither the trial court nor this court will assume that either Supervisor or Board will be false to their trust, nor may we assume that the court before which this case is heard will not examine with care the values involved in the litigation when the cause finally comes before it on the merits. There is nothing in the record from which such assumption could properly be made. All of the arguments of Chapman are substantially addressed to a subject of which Board under appellate supervision of the federal courts, has exclusive and sole jurisdiction. Our state courts have no power to interfere in the internal affairs of a federal savings and loan association. Such associations owe their existence to and are fully controlled by an agency of the executive branch of the United

States with rights of appeal under certain conditions to the federal courts only. With the wisdom or reasonableness of the original seizure and the procedure followed under Rules, this Court cannot concern itself. (*Woodward* v. *Broadway Federal Savings & Loan Assn.*, 111 Cal.App.2d 218, 223 [4] [244 P.2d 467]; *People* v. *Coast Federal Savings & Loan Assn.*, 98 F.Supp. 311.) There is no contention that any federal court has suspended Supervisor's powers.

In connection with the matters here under consideration, Rules provide, in substance, that Supervisor shall to the extent authorized by Board, have the same powers as a conservator. (Rule 547.2.) Upon appointment and service thereof on Association's officers, he has the right to take possession of all of Association's property, books and accounts and "shall succeed to all the rights, powers and privileges of its members, its officers and directors, or any of them . . . ." (Rule 547.7(a).) He may participate in any legal action and "in every way represent the Association" in any suit in which the Association may have an interest. (Rule 548.2(f).)

The validity and constitutionality of the Bank Act itself and the procedure provided by the Rules authorizing ex parte seizure and the conduct of its affairs by a conservator have been upheld by the United States Supreme Court, and the legal position of most of Chapman's arguments in this case is fully disposed of by that court in *Fahey* v. *Mallonee*, 332 U.S. 245 [67 S.Ct. 1552, 91 L.Ed. 2030]. That court there said, at page 1556 [67 S.Ct.]:

"It is complained that these regulations provide for hearing after the conservator takes possession instead of before. This is a drastic procedure. But the delicate nature of the institution and the impossibility of preserving credit during an investigation has made it an almost invariable custom to apply supervisory authority in this summary manner. It is a heavy responsibility to be exercised with disinterestedness and restraint, but in the light of the history and customs of banking we cannot say it is unconstitutional."

The reasons why an ex parte order might be found desirable to preserve intact all of the books, records and assets are too obvious to require further comment. There is no contention here that Supervisor did not serve his order of appointment on the proper Association officials, nor is it contended that he did not, in fact, take charge of Association. Neither is it contended that he did not post the required bond. (The record here indicates that Supervisor has a bond of $1,500,000

on file.) It is not contended that he did not notify Chapman, in writing, more than 20 days prior to the motion for substitution, that Chapman's services as attorney in this litigation were ended and that Clock, Waestman & Clock would thereafter act for Association in this litigation.

It is clear from the foregoing that Supervisor had full and complete authority to proceed in Association's name, and that all of the power of the officers and directors of Association in this respect had been taken from them and resides in Supervisor. It was in nowise necessary that the name of Association as a party litigant in this action be changed or that Supervisor's name be substituted. All that has happened is that control by order of Board and operation of law has passed completely out of the hands of its officers and directors and that power has passed into and resides in Supervisor.

### APPEALABILITY OF ORDER SUBSTITUTING ATTORNEY OF RECORD

█ Since Chapman was employed only in the ordinary capacity as an attorney without any property interest in the subject of litigation and no contract for any specified time, there can be no serious argument that he has any "power coupled with an interest." In such condition, his client had the right to supplant him at any time. (*Echlin* v. *Superior Court,* 13 Cal.2d 368, 372 [2] [90 P.2d 63, 124 A.L.R. 719]; *Wright* v. *Security-First Nat. Bank,* 13 Cal.2d 139, 140 [2] [88 P.2d 125]; *Hendricks* v. *Sefton,* 180 Cal.App.2d 526, 532 [9] [4 Cal.Rptr. 218]; *Hoult* v. *Beam,* 178 Cal.App.2d 736, 737-738 [2] [3 Cal.Rptr. 191]; *Davis* v. *Rudolph,* 80 Cal.App.2d 397, 402 [2] [181 P.2d 765]; *O'Connell* v. *Superior Court,* 2 Cal.2d 418, 421 [1] [41 P.2d 334, 97 A.L.R. 918]; *Bergan* v. *Badham,* 142 Cal.App.2d Supp. 855, 857 [1] [297 P.2d 815].)

█ The real purpose of the procedure provided by Code of Civil Procedure, section 284, is to have the record of representation clear so that the parties may be certain with whom they are authorized to deal. █ The function of the notice is that all parties may be apprised of what is happening and if there is some lawful reason why the new attorney ought not to be recognized as the attorney of record, the person having knowledge of such defect might appear and be heard. (*Carrara* v. *Carrara,* 121 Cal.App.2d 59, 63 [262 P.2d 591].) In order to do this, said section 284 provides

for notice of motion. In the case here at bar, Chapman not only had the opportunity, but did, in fact, fully participate in the arguments on the merits of the motion. We are satisfied that the real purpose of the provision regarding notice has been accomplished. (*Lacey* v. *Bertone,* 33 Cal.2d 649, 651-652 [1, 2, 3] [203 P.2d 755] ; *Batchelor* v. *Finn,* 169 Cal. App.2d 410, 425-428 [11a, b-14] [337 P.2d 545, 341 P.2d 803].)

Furthermore, since Chapman had no "power coupled with an interest," he has no appealable interest. His right to recover earned fees has not been impaired by the order, so that as to him it cannot rightfully be said to be a final order. He can still pursue, if necessary, in a separate action, the only substantial right he really has, that is, the recovery of earned fees. It is apparent, therefore, that as to him the order is not appealable. (*Telander* v. *Telander,* 60 Cal.App. 2d 207, 209 [1], 210 [2] [140 P.2d 204] ; *Edlund* v. *Los Altos Builders,* 106 Cal.App.2d 350, 356 [8] [235 P.2d 28].)

Since the sole right to control the litigation vested in Supervisor before Chapman filed his notice of appeal, and since Chapman was supplanted by other counsel, Chapman's attempt to use the name of Association as an appellant is without effect since he had no right to do so. (*Edlund* v. *Los Altos Builders, supra.*)

The appeal is dismissed.

Supervisor filed with this court a motion to compel substitution of attorneys in case the motion to dismiss appeal be denied. In view of our foregoing decision, said motion is denied.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied January 6, 1961, and appellant's petition for a hearing by the Supreme Court was denied January 31, 1961. Schauer, J., was of the opinion that the petition should be granted.